UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

ARAPAHOE RESOURCES, LLC,

     Plaintiff,

v.

PROFESSIONAL LAND RESOURCES,
LLC, et al.,

     Defendants.

)
)
)
)
)
)
)
)
)
)

Civil No. 15-10-ART

**MEMORANDUM OPINION AND
ORDER**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Eastern Kentucky houses some of the world's great natural resources. Coal is often the first thing that comes to mind when people think of Eastern Kentucky. But Arapahoe Resources had other things in mind when they employed Jonathan Mann's company, Professional Land Resources ("PLR"): they were hoping to find oil and gas. Arapahoe is in the business of acquiring oil and gas properties, and PLR's primary function is to broker such acquisitions. So, at first blush, this seems like a match made in heaven. Unfortunately, according to Arapahoe's complaint, the match was anything but heavenly.

## BACKGROUND

Arapahoe's complaint paints a picture of hope and broken promises. It all began when Mann approached Arapahoe in 2014 about acquiring oil and gas properties on Arapahoe's behalf. R. 21 ¶¶ 10–11 (amended complaint). Mann proposed that PLR perform customary land and title services for Arapahoe in exchange for payment. *Id.* ¶ 11. Arapahoe, however, was concerned about the "speculative nature of the gas play," so Mann

promised to limited his search "in accordance with Arapahoe's concerns." *Id.* ¶¶ 11–12. With that assurance in hand, Arapahoe entered into the agreement with PLR. *Id.* ¶ 11.

Once the parties reached that agreement, Mann took off like a wild roller coaster, disregarding any promises of smooth sailing and a cautionary approach. He (1) instructed PLR's contractors to use Arapahoe's name to "acquire as much oil and gas leasehold acreage in eastern Kentucky as they could"; (2) directed his contractors to perform hundreds of hours of leasehold work "far exceeding the scope of the project contemplated by Arapahoe"; (3) hired more contractors than necessary; and (4) charged Arapahoe for full days of work, regardless of whether the contractors worked at all that day. *Id.* ¶¶ 13, 15. Arapahoe expressed concerns to PLR about its billing practices, but the excessive work continued. *Id.* ¶ 13. Despite Arapahoe's concerns, it paid every invoice PLR submitted to it. *Id.* ¶ 25. But PLR did not pay its contractors, claiming that Arapahoe had refused to pay the invoices. *Id.* As a result, Arapahoe faces possible litigation from PLR's contractors. *Id.*

According to the complaint, it did not end there. Mann and PLR also improperly instructed their contractors to act as representatives of Arapahoe while performing leasehold services. *Id.* ¶ 14. PLR's contractors executed payments and offered oil and gas leases using Arapahoe's name, without any knowledge or permission from Arapahoe. *Id.* For example, Mann and his contractors visited with mineral interest owners and claimed that Arapahoe would honor oil and gas leases for the 3,500 acres on the schedule. *Id.* ¶ 21. But PLR only presented Arapahoe with one potential lease for review. *Id.* ¶ 19. That lease was for 70 net mineral acres. *Id.* For the remaining 3,430 acres, PLR represented to various owners that Arapahoe would honor oil and gas leases with them, and honor orders of payment that PLR

issued in Arapahoe's name.  *Id.* ¶ 21.  PLR, however, refused to provide Arapahoe with the proposed lease agreements or supporting title information.  *Id.* ¶ 20.  Mann and PLR have also refused to provide Arapahoe with any documents "relating to ownership reports, take off sheets, broker notes, abstracts, or even copies or images of the supposed lease and order of payment documents [Mann and PLR] entered into using Arapahoe's name."  *Id.*

Finally, Mann used PLR's work for Arapahoe to gain benefits for other companies he owned.  For example, PLR's contractors created work product to negotiate leases on behalf of Arapahoe in eastern Kentucky.  *Id.* ¶ 24.  Arapahoe paid for the work product, so it was Arapahoe's property.  *Id.*  But Mann used that work product for another of his companies without Arapahoe's permission.  *Id.*  Also, on one of his visits to Kentucky, Mann negotiated on behalf of Arapahoe with a property owner for a lease of approximately 1,000 acres.  R. 33-1 ¶ 3 (Keeton affidavit).[1]  After the negotiations, Mann told his contractor to change the first page of the lease from Arapahoe's name to the name of another company he owned.  *Id.*

In the end, Arapahoe paid PLR over $300,000 for its services.  R. 21 ¶ 26.  Arapahoe, however, never obtained an acceptable lease as a result of these services.  *Id.*  So Arapahoe filed the instant action against Mann and PLR.  *See* R. 1; R. 21 (amended complaint).

## DISCUSSION

Mann moves to be dismissed from this case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  R. 32-1 at 1 (motion to dismiss).  Mann also moves to dismiss two of Arapahoe's claims—Count X for alter ego and Count III for

---

[1] For a motion to dismiss based on lack of personal jurisdiction, the plaintiff bears the burden of establishing that personal jurisdiction exists.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The plaintiff may submit affidavits to show that the court has jurisdiction.  *Id.*  In this case, Arapahoe submitted one affidavit in support of its personal jurisdiction claim.  The Court will only consider the facts in this affidavit to determine if it properly has jurisdiction over Mann.

fraudulent inducement—for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  *Id.*  For the reasons stated below, this Court has personal jurisdiction over Mann.  And Arapahoe has pled sufficient facts to state a claim for alter ego and fraudulent inducement.  So Mann's motion to dismiss must be denied.

**I.      Arapahoe sufficiently pled a claim for alter ego.[2]**

Arapahoe seeks to hold Mann liable for the sins of PLR under the alter ego theory. Before addressing the merits of the alter ego claim, the Court must first determine which state's law applies.  State law controls here because the Court's jurisdiction derives from the diversity of citizenship of the parties.  *Garden City Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995).  Mann suggests that West Virginia law may apply here because PLR is a West Virginia corporation, yet Mann applies Kentucky law.  R. 32-1 at 19 & n.3.  The Court applies Kentucky's choice-of-law rules to resolve the question.  *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1005 (6th Cir. 1995) ("In a diversity action, the district court is obligated to apply the choice of law rules of the state in which it sits."). Under Kentucky law, a choice-of-law analysis is only required if the state laws conflict.  *See Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 667 (E.D. Ky. 2010).  Both West Virginia and Kentucky look to similar non-exhaustive lists of factors to determine whether to pierce the corporate veil.  *Compare Kubican v. The Tavern*, 752 S.E.2d 299, 312 (W. Va. 2013), *with Inter-Tel Techs., Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152, 163 (Ky. 2012).  First, both states require courts to determine if there is a loss of corporate

---

[2] Traditionally, a court should decide the question of jurisdiction before it addresses the merits of the claim.  *Bird v. Parsons*, 289 F.3d 865, 872 (6th Cir. 2002) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998).  However, in this case, the personal jurisdiction analysis is dependent in part on the survival of the alter ego claim.  So the Court will decide whether Arapahoe's claim for alter ego survives the motion to dismiss before it addresses whether the Court has personal jurisdiction over Mann.

separateness.  *See Kubican*, 752 S.E.2d at 313; *Inter-Tel Techs.*, 360 S.W.3d at 165.  If so, both states also require a showing of fraud or injustice.  *See Kubican*, 752 S.E.2d at 313; *Inter-Tel Techs.*, 360 S.W.3d at 164.   Given the parallels between West Virginia and Kentucky law pertaining to piercing the corporate veil, West Virginia's and Kentucky's laws do not conflict here.  So the Court will apply Kentucky law.

Under Kentucky law, a corporation is generally treated as distinct from its shareholders, officers, and directors.  *White v. Winchester Land Dev. Corp.*, 584 S.W.2d 56, 60 (Ky. 1979), *overruled on other grounds by Inter-Tel Tech., Inc.*, 360 S.W.3d 152.  But in certain circumstances, a court may pierce the corporate veil to hold shareholders or officers liable for the corporation's wrongdoing.  *Inter-Tel Techs., Inc.*, 360 S.W.3d at 155; *see also Schultz v. Gen. Elec. Healthcare Fin. Servs. Inc., et al.*, 360 S.W.3d 171, 179 (Ky. 2012) (applying *Inter-Tel* in cases attempting to hold officers liable for acts of corporation).  A court may pierce the corporate veil if: (1) the shareholder or officer has "exercised dominion over the corporation to the point that [the corporation] has no separate existence," and (2) "circumstances [exist] in which continued recognition of the corporation as a separate entity would sanction fraud or promote injustice."  *Id.*

Mann argues that Arapahoe has not sufficiently stated a claim for relief under alter ego theory.  R. 32-1 at 18.  Under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In other words, Arapahoe must plead enough facts to allow the court to draw the reasonable inference that the defendants are liable for the alleged misconduct.  *Id.* (citing

*Twombly*, 550 U.S. at 556).   The Court construes factual allegations "in the light most favorable to the plaintiff" and draws "all reasonable inferences in favor of the plaintiff." *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011) (quoting *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009)).

### A. Mann exercised domination over PLR that resulted in a loss of corporate separateness.

First, Arapahoe alleges sufficient facts to show that Mann exercised domination of PLR that resulted in a loss of corporate separateness.  *See Inter-Tel*, 360 S.W.3d at 155. While the Kentucky Supreme Court has listed 11 facts to consider, *id.* at 163 (citation omitted), the most critical factors are "grossly inadequate capitalization, egregious failure to observe legal formalities and disregard of distinctions between parent and subsidiary, and a high degree of control by the parent over the subsidiary's operations and decisions, particularly those of a day-to-day nature." *Id.* at 164 (citation omitted).  However, the court emphasized that courts should consider all 11 factors in their analysis.  *Id.* at 165.  Arapahoe alleges facts that support most of the eight applicable factors, and two of the three most crucial factors.

*Does the parent own all or most of the stock of the subsidiary?*  On its face, this factor does not apply because there is no stock issued by PLR.  *See* R. 21.  But the rationale of this factor is that sole ownership cuts in favor of finding domination.  *Pro Tanks Leasing v. Midwest Propane and Refined Fuels, LLC*, 988 F. Supp. 2d 772, 785 (W.D. Ky. 2013). Mann is the sole owner of PLR.  *Id.* at ¶ 2–3.  So this factor supports a finding of domination.

*Do the parent and subsidiary corporations have common directors or officers?* Though Mann is not a corporation, he is the president, CEO, and sole employee of PLR. *Id.* PLR has no other employees to represent its interests outside of Mann's interests. This factor also supports a finding of domination.

*Does the parent corporation finance the subsidiary?* Arapahoe did not plead any facts related to PLR's current financing. Arapahoe pled that Mann founded PLR, *Id.* ¶ 3, which suggests that Mann did finance PLR at one point. But this factor does not support a finding of domination absent more facts.

*Did the parent corporation subscribe to all of the capital stock of the subsidiary or otherwise cause its incorporation?* Again, it appears PLR has no stock. However, Mann founded PLR, so he caused its incorporation. *Id.* Accordingly, this factor supports a finding of domination.

*Does the subsidiary have grossly inadequate capitalization?* Arapahoe claims that PLR is undercapitalized and insolvent because PLR failed to pay amounts owed to its contractors. R. 21 ¶ 64. Mann argues that PLR has not paid its contractors because Arapahoe has not paid PLR, not because PLR is undercapitalized. R. 32-1 at 21. But Arapahoe alleges that it paid all of the invoices PLR submitted, *id.* ¶ 25, which suggests that PLR is unable to pay its contractors because it has inadequate capital. And even if the Court were to accept Mann's argument, operating a company on a check-to-check basis is evidence of undercapitalization. *See Inter-Tel*, 360 S.W.3d at 167 ("ITS had grossly inadequate capital for day-to-day operations because it had no funds at all, literally nothing of its own."). However, *Inter-Tel* requires something more to show *grossly* inadequate capitalization. If

the initial financing of the corporation was adequate, *Inter-Tel* requires facts showing that the inadequacy of capitalization results from "capital transfers to the controlling shareholder." *Id.* Arapahoe has not asserted any facts that Mann transferred any of PLR's assets to himself. *See* R. 21. So this factor does not support a finding of domination.

     *Does the parent use the property of the subsidiary as its own?* Arapahoe alleges that Mann used work product that PLR's contractors created for another company he owns. *Id.* ¶ 24. This suggests that Mann treated PLR's property as his own, supporting a finding of domination.

     *Do the directors or executives fail to act independently in the interest of the subsidiary, and do they instead take orders from the parent, and act in the parent's interest?* PLR does not have directors or executives outside of Mann. But facts suggest that PLR's contractors were taking orders from Mann and acting in Mann's interest, rather than in PLR's interest. For example, Arapahoe alleges that Mann wrongfully represented to some of PLR's contractors that they were working in connection with a "joint venture between Mann and Arapahoe." *Id.* ¶ 18. Facts also suggest that Mann, as PLR's director, was acting in his own interest rather than PLR's interest. As another example, Mann stated that he was Arapahoe's partner, and that he had invested "millions of his own dollars in the project." *Id.* So this factor supports a finding of domination.

     *Are the formal legal requirements of the subsidiary not observed?* Arapahoe argues that Mann "used PLR as an instrumentality of himself without observing the formalities that would distinguish PLR from Mann." R. 21 ¶ 63. Arapahoe alleges that Mann used work product that PLR generated for Arapahoe at another one of his companies. *Id.* ¶ 24. A CEO

from one company should not be able to use that company's work product at another of his companies without compensation. Arapahoe also claims that Mann falsely told his contractors (1) that their work was part of a joint venture between Mann and Arapahoe, and (2) that Mann had invested millions in the project. *Id.* ¶ 18. This suggests that Mann acted as if he and PLR were indistinguishable.

*High Degree of Control.* This factor is one of the most crucial, though it is not among the 11 factors the Kentucky Supreme Court lists. *Inter-Tel*, 360 S.W.3d at 164. Arapahoe asserts facts demonstrating that Mann had a high degree of control over PLR's operations and decisions. Mann is the sole member of PLR—its founder, owner, president, CEO, and only employee. R. 21 ¶¶ 3, 62. Mann controlled and directed all of PLR's operations. *Id.* ¶ 62. And Mann oversaw all of PLR's contractors. *Id.* ¶ 13. At the motion-to-dismiss stage, these facts are sufficient to show that Mann had a high degree of control over PLR. *See Pro Tanks Leasing*, 988 F. Supp. 2d at 791 (holding that shared ownership in two companies and the same board of directors at least "creates the possibility of a high degree of control"). As a result, Arapahoe has pled sufficient facts to meet the domination requirement.

Taken together, Arapahoe alleges facts in support of six of the eight applicable factors, and two of the three critical factors. Not all factors are required for a court to find domination. *See Inter-Tel*, 360 S.W.3d at 166–68 (holding veil piercing was appropriate when two of three critical factors were met). Because Arapahoe pled facts in support of the majority of the factors, Arapahoe has stated a plausible claim for the first element of an alter ego claim. *See Pro Tanks Leasing*, 988 F. Supp. 2d at 792 (finding that first element was

met when "two of the three critical factors" and "a majority of all of the factors are in favor

of this finding" (internal quotations omitted)).

### B.  Failure to pierce the corporate veil would sanction fraud or promote injustice.

Second, Arapahoe has sufficiently demonstrated that treating PLR as a separate entity

from Mann would promote injustice.  Kentucky no longer requires evidence of actual fraud

to prove the second alter ego element.  *Inter-Tel*, 360 S.W.3d at 164–65.  Instead, the

Kentucky Supreme Court adopted the Seventh Circuit's test from *Sea-Land Services, Inc. v.*

*Pepper Source*, 941 F.2d 519 (7th Cir. 1991)—that the corporate veil should be pierced if

failure to do so would sanction fraud or promote injustice.  *Id.* at 522.  "[P]romote injustice"

requires some "wrong" beyond a plaintiff's inability to collect a debt from the failure to

pierce the corporate veil.  *Id.* at 524.  For example, "a party would be unjustly enriched"

without veil piercing.  *Id.*

Mann would be unjustly enriched if PLR's corporate veil is not pierced.  Mann is the

only member of PLR, and he is its president, CEO, and only employee.  R. 21 ¶ 3.  Mann is

the only party that benefits from PLR's business.  Arapahoe alleges facts that suggest that

Mann was wrongfully profiting from PLR's acts.  For instance, Arapahoe alleges that PLR

and Mann billed Arapahoe excessive rates and for full days of work when no work was

performed "so [the defendants] could profit from the difference."  *Id.* ¶ 15.  As such, Mann

has benefitted unjustly from the alleged fraud and breach of contract.  *See Sea-Land*, 941

F.2d at 523–24 (citing *B. Kreisman & Co. v. First Arlington Nat'l Bank of Arlington Heights*,

415 N.E.2d 1070, 1072 (Ill. 1980)).  Also, Mann used work product that PLR created for

Arapahoe at another of his companies without compensating PLR, *id.* ¶ 24.  These facts

demonstrate that Mann misused PLR for his own benefit.  So there is "more here than simply domination of [PLR] by [Mann] and [Arapahoe] left holding an uncollectible debt: there is the required injustice."  *Inter-Tel*, 360 S.W.3d at 167.  Arapahoe has pled sufficient facts to state a claim against Mann under the alter ego theory.  Mann's motion to dismiss Count X of the complaint must be denied.

## II.   This Court has personal jurisdiction over Mann.

Mann moved to be dismissed from this case for lack of personal jurisdiction.  *See* R 32-1.  Mann argues that Arapahoe failed to allege facts sufficient to show that Kentucky has personal jurisdiction over Mann individually.  *Id.* at 7.  To establish personal jurisdiction over Mann, Arapahoe must show: (1) that jurisdiction is proper under Kentucky's long-arm statute, and (2) that the exercise of jurisdiction over Mann does not violate the Due Process Clause.  *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).  Under the Due Process Clause, there are two types of personal jurisdiction: "general" and "specific."  *See Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994).  Arapahoe makes no attempt to assert general jurisdiction over Mann.  *See* R. 21; R. 33.  So this Court will only consider whether Arapahoe asserts sufficient facts to satisfy specific personal jurisdiction.

Because the Court relies only on the pleadings and supporting affidavits, "the plaintiff need only make a 'prima facie' case that the court has personal jurisdiction."  *Conn*, 667 F.3d at 711 (citing *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006)).  The Court does not weigh the facts disputed by the parties.  *Id.*  Instead, facts are considered in the light most favorable to the plaintiff.  *Id.*

### A. Mann's conduct in an official capacity for PLR may serve as the basis for personal jurisdiction

Under Sixth Circuit law, jurisdiction over an officer cannot be based solely on jurisdiction over the corporation. *See Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000). But "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim," the agent's official conduct can serve as the basis of personal jurisdiction if it meets the requirements of the Due Process Clause. *Id.*

Arapahoe alleges sufficient facts to show that Mann was "actively and personally involved in the conduct giving rise to the claim." *Id.* Arapahoe argues that Mann was the "*sole* driver" of PLR's relationship with Arapahoe. R. 33 at 11 (emphasis in original). Arapahoe asserts the following facts in support: Mann initiated discussions with Arapahoe and negotiated the contract for services to be performed in eastern Kentucky. R. 21 ¶ 10; *see also* R. 32-2 ¶¶ 5–6 (Mann affidavit). Mann hired, directed, and supervised the PLR contractors conducting work in Kentucky in service of the contract. R. 33-1 ¶¶ 1, 4 (Keeton affidavit). Mann visited Kentucky on multiple occasions to meet with property owners on behalf of Arapahoe. *Id.* ¶¶ 2–3. Mann negotiated with at least one of these property owners to obtain leases on behalf of Arapahoe. *Id.* ¶ 3. Mann allegedly told a contractor to change the first page of a lease from Arapahoe to the name of another company Mann owns. *Id.* Mann also met with Kentucky county clerks on these visits as part of the services discussed in the contract. *Id.* ¶ 2. Taken together, these facts demonstrate that Mann was "actively and personally involved" in the contract and its services. *Balance Dynamics*, 204 F.3d at 698. So this Court can consider Mann's official conduct in the personal jurisdiction analysis.

## B. This Court has personal jurisdiction over Mann under Kentucky's long-arm statute.

Next, the Court must analyze whether Mann's official conduct is sufficient to justify personal jurisdiction under Kentucky's long-arm statute ("the long-arm statute"), Ky. Rev. Stat. Ann. § 454.210(2)(a).  *See Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 54–56 (Ky. 2011).  The long-arm statute sets forth nine exclusive categories of conduct that can give rise to personal jurisdiction over an individual in Kentucky.  *Id.*; *see also* Ky. Rev. Stat. Ann. § 454.210(2)(a).  A court has personal jurisdiction only when the claim "aris[es] from" the defendant's engagement in one of the enumerated nine categories of conduct.  Ky. Rev. Stat. Ann. § 454.210(2)(a).  The Supreme Court of Kentucky has interpreted "arising from" to require a "reasonable and direct nexus" between the injurious conduct and one of the nine categories.  *Caesars*, 336 S.W.3d at 59.  So the Court must determine: (1) whether Mann's activities fall under any of the nine enumerated categories, and if so, (2) whether Arapahoe's claims against Mann have a reasonable and direct nexus to those activities.  *See id.* at 57–59 (applying two-step test to determine if statute conferred personal jurisdiction over defendants).

First, Mann's activities clearly fall under one of the nine enumerated categories.  The second category may confer personal jurisdiction when a person "[c]ontract[s] to supply services or goods in this Commonwealth."  Ky. Rev. Stat. Ann. § 454.210(2)(a)(2).  The contract does not need to be made or executed in Kentucky.  *Hinners v. Robey*, 336 S.W.3d 891, 896 (Ky. 2011).  Instead, the long-arm statute only requires that "the contract provide for the supplying of services or goods to be transported into, consumed, or used in Kentucky."  *Id.*  In his affidavit, Mann admits that he contracted to supply services in

13

Kentucky.  R. 32-2 ¶¶ 5–6.  Specifically, Mann (acting on behalf of PLR) "entered an oral contract with Arapahoe . . . for PLR to provide landman and brokering services to locate and obtain leasehold interests in Eastern Kentucky's Rogersville Shale for Arapahoe."  *Id.*  Although neither party was in Kentucky when the contract was entered into, *id.* ¶ 6, Mann contracted for PLR to perform services (landman and brokering) for Arapahoe in eastern Kentucky.  Therefore, the long-arm statute authorizes jurisdiction over Mann if Arapahoe's claims arose out of the contract.  *See Hinners*, 336 S.W.3d at 896.

Second, a reasonable and direct nexus exists between Arapahoe's claims and the contract.  Arapahoe brought several claims solely against PLR, and not against Mann.  *See* R. 21.  But because Arapahoe sufficiently stated a claim for alter ego, Mann is also potentially liable for all of the claims Arapahoe asserts against PLR.  *White*, 584 S.W.2d at 61 (explaining that alter ego is one of the theories used "to hold the shareholders of a corporation responsible for corporate liabilities").  So the Court will treat all of Arapahoe's claims as if they were brought against Mann for the purposes of personal jurisdiction.

All of Arapahoe's claims relate directly to the contract and the services PLR was contracted to provide in Eastern Kentucky.  Count I alleges breach of the contract.  R. 21 ¶¶ 29–31.  Count II alleges that PLR presented Arapahoe with fraudulent invoices for the services provided for in the contract.  *Id.* ¶ 33.  Count III alleges that Mann made fraudulent representations to induce Arapahoe to enter the contract.  *Id.* ¶¶ 37–39.  Count IV alleges that PLR did not provide Arapahoe with the work product PLR generated to carry out the services in the contract.  *Id.* ¶¶ 42–44.  Count V requests a declaration of the rights and obligations of the parties under the contract.  *Id.* ¶¶ 47–49.  Counts VI through VIII involve

allegations that the defendants wrongfully received monetary benefits from Arapahoe, in violation of the terms of the contract. *Id.* ¶¶ 51, 54, 57. Count IX requests an up-to-date accounting of all the services performed and expenses incurred by the defendants through the purported performance of the contract. *Id.* ¶ 60. Finally, Count X alleges that Mann's actions, as alter ego of PLR, in both forming and performing the contract, damaged Arapahoe. *Id.* ¶¶ 63–68. Therefore, the Court's exercise of personal jurisdiction over Mann does not violate the statute.

### C. This Court's jurisdiction over Mann does not violate due process

The exercise of personal jurisdiction comports with due process and "traditional notions of fair play and substantial justice" if an out-of-state defendant has minimum contacts with the forum state. *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The Sixth Circuit applies a three-part test to determine if a defendant has minimum contacts in the forum state. The exercise of personal jurisdiction is warranted when: (1) the defendant purposefully availed himself "of the privilege of acting in the forum state or causing consequence in the forum state"; (2) the cause of action arises from the defendant's activities in connection with the state; and (3) the acts of the defendant or the consequences of those acts have a "substantial enough connection with the forum state" such that jurisdiction over the defendant is reasonable. *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1299 (6th Cir. 1989) (citations omitted). For the reasons stated below, Mann has minimum contacts with Kentucky to satisfy "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

Mann purposefully availed himself of Kentucky. A defendant purposefully avails himself of the privileges of the forum state "where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations omitted). When a defendant's activities receive the benefits and protections of the state's laws, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* at 476. Purposeful availment does not require the defendant to physically enter the forum state. *Id.* Instead, it only requires that his efforts are "purposefully directed" toward the state. *Id.* In this case, Mann physically entered Kentucky *and* purposefully directed his actions at Kentucky. Arapahoe alleges that Mann reached out to Arapahoe with the possibility of contracting for services to be performed in eastern Kentucky. R. 21 ¶ 10. Under the contract, Mann agreed that PLR would perform land and title services for Arapahoe in eastern Kentucky. *Id.* ¶ 11. Mann then hired multiple contractors and instructed them to acquire oil and gas leases in eastern Kentucky on behalf of Arapahoe. *Id.* ¶ 13. These leases were presumably acquired under the protection of Kentucky property laws. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law"). Finally, Mann himself traveled to Kentucky on multiple occasions to meet with property owners and county clerks in connection with PLR's contract with Arapahoe. R. 33-1 ¶¶ 2–3. Because Mann purposefully availed himself of Kentucky and Kentucky's law, Mann is reasonably subject to the burdens of litigation in Kentucky. *See Burger King*, 471 U.S. at 476.

The cause of action also arises from Mann's activities in connection with Kentucky. As discussed above, all of Arapahoe's claims arise out of the contract to perform services in Kentucky and the actual services performed in Kentucky. Finally, the exercise of personal jurisdiction over Mann in Kentucky is reasonable. A court must consider several factors in determining if the exercise of jurisdiction is reasonable, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolutions to the controversies." *Am. Greeting Corp. v. Cohn*, 839 F.2d 1164, 1169–70 (6th Cir. 1988) (citations omitted). The Sixth Circuit has held that when the first two criteria are met, "an inference arises that this third factor [of reasonableness] is also present." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996) (citations omitted).

The balance of these factors favors the Court's jurisdiction over Mann. The burden on Mann is not unduly heavy—Mann resides in West Virginia, which neighbors Kentucky, and Mann traveled to Kentucky to perform services related to the contract with Arapahoe. Also, Arapahoe has a strong interest in the availability of a convenient forum for resolution of its claims. *See id.* at 1170. And Kentucky has a strong interest in providing a forum for this adjudication because this case centers on Kentucky. The dispute involves services that were performed in Kentucky, R. 21 ¶ 11; Arapahoe alleges that the defendants wrongfully entered into leases on Arapahoe's behalf in Kentucky, *id.* ¶ 13; and Arapahoe claims that the defendants submitted fraudulent invoices to Arapahoe for services that were performed in Kentucky, *id.* ¶¶ 15–16, 23, 33. *See Am. Greeting Corp.*, 839 F.2d at 1170. The interests of the interstate judicial system are not implicated here. *See id.* Because the Court's exercise of

personal jurisdiction over Mann comports with the requirements of Kentucky's long-arm statute and due process, Mann's motion to dismiss for lack of personal jurisdiction must be denied.

### III.   Arapahoe sufficiently pled a claim for fraudulent inducement.

Arapahoe claims that Mann knowingly made several false representations and promises to Arapahoe to induce Arapahoe to enter the contract. R. 21 ¶¶ 37–40.  To state a claim for fraudulent inducement under Kentucky law, a plaintiff must allege: (1) a material representation; (2) that is false; (3) that was "known to be false or was made recklessly"; (4) that was "made with inducement to be acted upon"; (5) that the plaintiff acted in reliance on; and (6) the plaintiff's reliance on the representation caused injury.  *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).   For representations that are promissory in nature, courts apply a different third prong: a plaintiff must show that the defendant "knew at the time the representations were made he had no intention of carrying them out."  *Major v. Christian Cnty. Livestock Market, Inc.*, 300 S.W.2d 246, 249 (Ky. 1957); *see also Spears v. Amason*, 2011 WL 4499360 (E.D. Ky. Sept. 26, 2011).   To survive a motion to dismiss, claims of fraud must satisfy the heightened pleading standard in Federal Rule of Civil Procedure 9(b).  *Minger*, 239 F.3d at 800.  The facts constituting fraud must be stated with particularity.  *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001).  It is not enough to offer "[g]eneralized and conclusory" recitations of the elements.  *Id.*  Instead, a plaintiff must plead facts showing that the defendant's actions satisfy each element of the claim.  *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 471 (6th Cir. 2011).

Arapahoe has alleged sufficient facts with particularity to plead fraudulent inducement. Arapahoe alleges that Mann made two false representations to Arapahoe when the parties were initially negotiating the contract: Mann stated that PLR would submit proposed leases to Arapahoe for review and approval. R. 21 ¶ 19. This representation was false because Mann and PLR only submitted one proposed lease agreement, for approximately 70 net mineral acres, to Arapahoe. *Id.* ¶ 19. PLR never submitted leases to Arapahoe for its review and approval for the 3,430 net mineral acres that PLR told various owners Arapahoe would honor. *Id.* ¶¶ 19–21. Mann also represented that the scope of the work "would be limited in accordance with Arapahoe's concerns regarding the speculative nature of the gas play." *Id.* ¶ 12. Arapahoe asserts that this representation was false because Mann instructed his "unreasonable number" of contractors to "acquire as much oil and gas leasehold acreage in eastern Kentucky as they could using Arapahoe's name." *Id.* ¶¶ 13, 15. And Mann instructed the contractors to perform hundreds of hours of title work, "far exceeding the scope of the project contemplated by Arapahoe." *Id.*

Arapahoe pled sufficient facts to suggest that Mann knew his representations to Arapahoe were false when he made them. R. 21 ¶ 38. Mann asserts that Arapahoe's claim fails because Arapahoe did not specifically allege that Mann "knew at the time that he had no intention of carrying [the promises] out." R. 32-1 at 26; R. 34 at 12. Though Arapahoe does not use those specific words, the language in the complaint is sufficient to meet the third prong of the test. Arapahoe states that Mann knew his representations to Arapahoe were false when he made them. R. 21 ¶ 38. The statement implies that Mann made promises that he knew were false when he made them. Moreover, the facts in the complaint suggest that

Mann made certain promises to Arapahoe, and then immediately acted in opposition to these promises. *Id.* ¶¶ 11–17, 19–22. From these facts, the Court can reasonably infer that Mann never intended to keep his promises.

Arapahoe successfully pled the fourth, fifth, and sixth elements to state a claim for fraudulent inducement. Arapahoe alleges that Mann made the false representations "for the purpose of inducing [Arapahoe] to enter into a contract with PLR." *Id.* ¶ 37. Mann initially reached out to Arapahoe about entering into a contract, and Mann made these representations during the contract negotiations. *Id.* ¶¶ 10–12. Mann also promised to limit the scope of the work after Arapahoe expressed concerns. *Id.* ¶ 12. These facts suggest that Mann made his statements to induce Arapahoe to enter into the contract. In addition, Arapahoe relied on Mann's representations when it entered into the contract with PLR. R. ¶¶ 11, 39. And Arapahoe suffered over $300,000 in damages as a result of its reliance on Mann's false representations. Because Arapahoe pled sufficient, particular facts to state a claim for fraudulent inducement, Mann's motion will be denied.

## CONCLUSION

The Court may exercise personal jurisdiction over Jonathan Mann, Jr. Arapahoe's complaint contains sufficient facts to make a *prima facie* case that Mann can be sued in the Commonwealth. His conduct in this case revolves around Kentucky: Mann initiated a contract for services to be provided in Kentucky; he directed contractors to carry out these services in Kentucky; he visited Kentucky on several occasions to help perform these services; and Mann and his contractors negotiated mineral leases in Kentucky, under Kentucky laws. Kentucky also has an interest in providing a forum for litigation arising out

of the contract and the services provided within it.   Arapahoe also pled sufficient facts to state claims for alter ego and fraudulent inducement.

Accordingly, it is **ORDERED** that Mann's motion to dismiss, R. 32, is **DENIED**.

This the 17th day of August, 2015.

**Signed By:**

*__Amul R. Thapar__*

**United States District Judge**